IN THE UNITED STATE DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HUGH LANTZY,                    )
                                )
        Plaintiff,              )
                                )
    v.                          )   2:05cv843
                                )   **Electronic Filing**
JOANNE B. BARNHART,             )
COMMISSONER OF SOCIAL           )
SECURITY,                       )
                                )
        Defendant.              )

MEMORANDUM OPINION
June 2, 2006

**I.    INTRODUCTION**

Plaintiff, Hugh Lantzy ("Plaintiff"), brings this action pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), as amended. 42 U.S. C. §§ 1381-1383 (f). The parties have filed cross motions for summary judgment, and the record has been developed at the administrative proceedings.

**II.   PROCEDURAL HISTORY**

Plaintiff protectively filed application for SSI benefits on December 31, 2002, alleging disability since December 1, 2002, because of Hepatitis C, severe depression, as well as lower back pain, leg, chest, and dental pain. R.15, 98, 99, 279, 280.  Plaintiff's claim was initially denied, and he filed a timely request for a hearing. R.15. A hearing was held in this matter on October 21, 2003, in Latrobe, Pennsylvania, before Administrative Judge John J. Mulrooney ("ALJ"). R. 272. Plaintiff was represented by counsel, E. David Harr. A Vocational Expert ("VE"), Eugene Hoffman, also appeared and testified. R. 272. The ALJ issued an unfavorable decision on November 20, 2003, finding that the Plaintiff was "not disabled" within the meaning of the Social Security Act. R. 12-25. The ALJ's decision became the final decision of the Commissioner when on May 4, 2005, the Appeals Council denied Plaintiff's request for review.

1

R.5-7. The instant action now seeks review of the Commissioner's final decision, and the matter is before this court on the cross-motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

### III.  STATEMENT OF THE CASE

Plaintiff was born on July 13, 1958. R.169. He is currently forty-seven (47) years old, making him forty -four (44) years old at the time of application for SSI benefit and forty-five (45) years old at the time of the administrative hearing. R 15. Under the Commissioner's regulations, applicants under the age of 50 are considered "younger individuals" and their age is not considered a significant impediment to adapting to new work situations. 20 C.F.R § 416.963. Plaintiff has a high school education and has worked as a heavy equipment operator, a maintenance man, and a telemarketer. R. 15,180. The skill levels of the jobs held by Plaintiff are described by the VE in this case as medium/semi-skilled (heavy equipment operator and maintenance man), and sedentary/semi-skilled (telemarketer). R.298.

Plaintiff filed his application for disability insurance benefits on December 31, 2002, alleging disability since December 31, 2000. Plaintiff has a history of depressive symptoms first diagnosed in January of 1988. R.181. Plaintiff indicated a history of degenerative disk disease of the lumbar spine and has had two operations to address the problem. Plaintiff's first operation was sometime in the early 1990s and his second was in 1997. R. 15, 224. Plaintiff is a cigarette smoker and suffers from bronchitis. His flare-ups are treated effectively and without adverse side effects, with the medication Proventil as well as with antibiotics. R17. Plaintiff was diagnosed with Hepatitis C in 2002. R.17. The record indicates Plaintiff also suffers from leg, chest, dental pain, and has a history of substance abuse. R17.

In addition to physical disabilities, Plaintiff alleges significant emotional and psychological disabilities. R 17, 19,181.  On October 4, 1988, Plaintiff sought treatment for depression at Latrobe Area Hospital. R 17.  In March 2002, Plaintiff was hospitalized after a suicide attempt. He responded well to the medications Wellbutrin, Revia, Trazodone, and Pepcid. At the time of discharge Plaintiff was comfortable and cognizant of what it would take to

lift his depression and was not exhibiting any suicidal thoughts. In Feb 2003, Dr. John Carosso, Ph.D., a consultative psychologist, evaluated Plaintiff and found him to be alert and oriented to time, person, and place. R. 182. Dr. Carosso diagnosed Plaintiff with a global assessment functioning (GAF) of forty-three (43) maintained throughout the year, a major depressive disorder (recurrent), nicotine dependency, alcohol dependency (partial remission), and sedative abuse (partial remission). R.184. A mental functional capacity assessment completed by Dr. Carosso determined that the Plaintiff had a fair ability to: maintain personal appearance, behave in an emotionally stable manner, demonstrate reliability, follow work rules, relate to coworkers, use judgment, interact with supervisors, maintain concentration, and to understand, remember, and carry out detailed job instructions. R. 185-186. Dr. Carosso also determined that the Plaintiff had poor-to-no ability to deal with work stress and to relate in social situations. R. 185-186.

On March 3. 2003, Dr. Ray Milke, Ph.D, a state agency medical consultant, reviewed the record of psychological evidence for Plaintiff. Based upon this review of the information, Dr. Milke determined that Plaintiff could perform simple, routine, repetitive work tasks. Dr. Milke's assessment was consistent with Dr. Carosso's findings that Plaintiff retained a fair ability in all areas of adjustment and had an "unlimited- to- very- good" ability to carry out simple job instructions. R. 190.

Plaintiff cites Doctors Klion and Provance as his treating physicians for treatment of his Hepatitis C, and Dr. Cseh as his treating psychiatrist. Dr. Cseh filled out a Department of Welfare (DPW) Employability form on April 26, 2003 on which he projected that Plaintiff would be temporarily disabled from May 7, 2003 to May 7, 2004, due to bipolar disorder. R.258. On May 7, 2003, Dr. Cseh evaluated Plaintiff and determined Plaintiff was temporarily disabled until August 10, 2003. He noted signs of depression but a lack of psychosis. R.262. Dr. Cseh recommended that Plaintiff slowly wean himself off narcotics following dental surgery. He called for a full evaluation of Plaintiff's status after six weeks of abstention from narcotics. R. 225. On August 6, 2003, Dr. Provance evaluated the status of Plaintiff's physical health. Dr. Provance found Plaintiff's Hepatitis C to be responding well to treatment with the medication

Ribavirin. Dr. Provance also noted Plaintiff's weight had stabilized and he was taking his medications as proscribed. A physical examination found no other abnormalities. R. 252.

Dr. Eugene Hoffman, VE, gave testimony at Plaintiff's hearing regarding the availability of jobs for an individual with Plaintiff's educational and vocational profile as well as his specific limitations. R. 289-301. A hypothetical person with the same limitations and past history as Plaintiff could perform light, simple, routine, repetitive work tasks, which required only occasional balancing, stooping, kneeling, crouching, or crawling. R. 298. The VE noted that jobs with limited to occasional interaction with supervisors and co-workers were available in Plaintiff's area. R. 298-99. The VE testified that the hypothetical individual could perform tasks in both the "light" and "sedentary" work ranges. "Light work" means a job where the maximum lifting is twenty pounds and frequent lifting is limited to ten pounds and requires an individual to be on his feet for four to six hours per day and sit approximately two hours per day. Examples of light work include blister packer, bottle/glass packer, flat tire worker, and laundry sorter. R. 300. Sedentary work involves a maximum lifting of ten pounds, with frequent lifting of less than ten pounds, and can require an individual to sit approximately six hours of an eight-hour-day and stand for approximately two hours per day. Examples of sedentary work include an assembler of small parts, a hand packer of small parts, etc. Both "light" and "sedentary" work are available in the local and national economy. R.299-300.

### IV.   STANDARD OF REVIEW

Congress provides that any individual, after any final decision of the Commissioner, may obtain a review of claimant's application for disability benefits. 42 U.S.C § 405 (g). As part of the Commissioner's answer, the Commissioner shall file a certified copy of the transcript of the record, including the evidence upon which the findings and decision complained of are based. According to Section 405(g), "the court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security." The role of the district court is to determine whether there is substantial evidence to support the Commissioner's decision. *Adorno v. Shalala*, 40 F.3d 43, 46

(3d Cir.1994). The court is bound by the ALJ's finding of fact if it is supported by substantial evidence in the record. 42 U.S.C. § 405 (g); *Doak v. Heckler*, 760 F.2d 26, 28 (3d Cir. 1986). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999); *Verntura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995).

In order to establish a disability under the Social Security Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health and Human Services*, 841 F.2d 57,59 (3d Cir. 1988); 42 U.S.C. § 423 (d)(1). A claimant is considered unable to engage in any substantial activity only if his physical or mental impairment or impairments are of such severity that he is not "only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

An ALJ must do more than simply state factual conclusions, but instead must make specific finding of fact to support his or her ultimate findings. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983). The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence. *See Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705. (3d Cir. 1981). Serious consideration must also be given by the ALJ to the claimant's subjective complaints of pain, even when those assertions are not confirmed fully by objective evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993); *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986).

The Social Security Administration has promulgated regulations incorporating a sequential evaluation process for determining whether a claimant is under a disability. 20 C.F.R § 404, 1520; *Williams v. Sullivan*, 970 F.2d 1178, 1180 (3d Cir. 1992). In the first step, the commissioner must consider the claimant's work activity. If claimant is engaged in substantial gainful activity, the disability claim will be denied. *Bowen v. Yuckert*, 482 U.S. 137, 410 (1987).

5

In step two, the Commissioner must determine whether a claimant is suffering form severe impairment. 20 C.F.R § 404.1520 (c). If the claimant fails to show his impairments are "severe," he is ineligible for disability benefits.

In step three, the Commissioner compares the medical evidence of the claimant's impairment to list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404. 1520(d). If the claimant's impairment matches, or is "equal" to, one of the listed impairments he or she qualifies for benefits without further inquiry. If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. In step four, the ALJ is required to consider whether the claimant retains the residual functional capacity (RFC)[1] to perform past relevant work. 20 C.F.R. § 404.152 (d). The claimant bears the burden of demonstrating an inability to return to his past relevant work. *Adorno v. Shalala*, 40 F.3d 43,46 (3d Cir. 1994).

If the claimant is unable to resume his former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers within the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, or RFC. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he is capable of performing work and is not disabled. See *Plummer v. Apfel,* 186 F.3d at 428; 20 C.F.R. § 404.152(f). The ALJ will often seek the perspective of a vocational expert in the final step. See *Podenworney v. Harris*, 745 F.2d 210, 218 (3rd Cir. 1984).

---

[1] Residual functional capacity is defined as that which an "individual is still able to do despite limitations caused by his or her impairments." Burnett v. Commissioners of Soc. Sec. Admin., F.3d 112, 121 (3d Cir. 2000) (citing Hartranft v. Apfel, 181 F.3d 358, 359 n.1 (3d Cir. 1999)).

## V.  DISCUSSION

Plaintiff argues that the ALJ's determination merits reversal by this Court for two reasons. First, Plaintiff asserts that the ALJ improperly rejected the medical opinions of Plaintiff's treating psychiatrist and consultative psychological examiner and relied on his own lay medical opinion as to Plaintiff's ability to engage in substantial gainful activity. Second, Plaintiff asserts improper questioning of the vocational expert by the ALJ because of a failure to pose an accurate hypothetical tailored to all the specific work-related limitations listed in the administrative record. The court's review of this decision is limited to determining whether the decision was supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); 42 U.S.C. This Court will first address the assertion that the ALJ disregarded the evidence provided by Plaintiff's treating physician(s) and relied on his own lay medical opinions.

The ALJ used the five step process described above and outlined by the Social Security Act to evaluate Plaintiff's SSI claim. 20 C.F.R. § 416.920 (2005). The ALJ acknowledged the medical claims presented by Plaintiff such as Hepatitis C, depression, degenerative disk disease of the lumbar spine, status-post surgery times two, dental caries, substance abuse, a bipolar disorder, and a history of bronchitis. The ALJ also indicated in his findings that these impairments have "more than a minimal impact" upon Plaintiff's ability to engage in work-related activities. Consequently, they are 'severe' impairments. R16. The ALJ then determined whether Plaintiff's severe impairment met the severity of the impairments contained in Appendix 1, Subpart P, Regulations No. 4, the listing of Impairments. During his evaluation of Plaintiff's impairments, particularly under Listing 12.04 addressing affective disorders, the ALJ found the medical evidence of record did not indicate that Plaintiff's severe impairments met the requirements of Appendix 1, Subpart P, Regulation No. 4. The state agency medical consultant concurred with this finding. R16-17

Several sources of medical information are available as to the level of impairment suffered by Plaintiff, as well as to the effect of that impairment on his ability to engage in substantive meaningful employment. "A court considering a disability claim must give greater

weight to the findings of a treating physician than to the finds of a physician who has examined Plaintiff only once or not at all." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). However, the opinion of Plaintiff's treating physician is to be given controlling weight only if the impairment is demonstrated by "medically acceptable clinical or laboratory diagnostic techniques not inconsistent with other substantial evidence in your case record." 42 U.S.C. § 423 (d)(1), (3). For a treating physician's diagnosis to be controlling, the rules express a necessity for additional information supporting that opinion. The Social Security Commission looks to "the kinds and extent of examinations and testing the source has performed." 20 C.F.R. § 416. 927 (d) (2) (ii). "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided. *Winters v. Barnhart*, 153 Fed. Appx. 846, 849-50 (3d Cir. 2005) *quoting Plummer*, 186 F.3d at 429. In this case, the report by Plaintiff's primary physician, Dr. Cseh, required little more than checking boxes and briefly filling in blanks. The reports by Dr. Cseh lack the explanations and depth required to satisfy the requirements that they be held as controlling evidence of Plaintiff's disability. *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). Form reports and check sheets have been deemed "weak evidence at best." When "residual function capacity ("RFC") reports" are not accompanied by "thorough written reports," the reliability of the RFC reports are deemed "suspect." *Brewster v.Heckler* 786 F.2d 581, 586 (3d Cir. 1983); *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984) *citing O' Leary v. Schweiker* 710 F.2d 1134, 1141 (8th Cir. 1983).

Plaintiff's motion for summary judgment contains a second claim, that the ALJ "failed to proffer a hypothetical which accurately set forth all Plaintiff's specific work related limitations of function as documented in the administrative record." Plaintiff cites the opinions in *Burns v. Barnhart* and *Podenworney v. Harris* to further the claim that the ALJ hypothetical to the VE was deficient. *Burns* held that if the "hypothetical did not include all of the limitations suffered" by the Plaintiff, the hypothetical is deemed to be deficient. *Burns v. Barnhart* F.3d 113, 20 (2002). Plaintiff's motion for summary judgment states that a hypothetical may not consist of "merely general descriptions of a claimant's abilities, but most include all the specific,

individual limitations supported by the record." In this case the court finds that the ALJ's hypothetical did encompass all of Plaintiff's specific limitations. Although the questioning by the ALJ does not indicate by name, the specific medical and psychological difficulties faced by Plaintiff; his questions to the VE encompass the limitations associated with the diagnoses on record. The ALJ's hypothetical limits the individual described to simple, routine, repetitive tasks not performed in a production or quota-based environment, involving only simple decision making processes and relatively few workplace changes. These specifications take into account not only Plaintiff's training and education level, but his mental state as well. The ALJ also tailored the hypothetical to an individual with a restricted range of motion, and limited the weight maximums to that associated with "light" work. These limitations are specific to the degenerative lumbar disorder suffered by Plaintiff. R. 298. The ALJ indicated with great specificity the necessity that the individual in question have the least possible interaction with supervisors and co-workers and no interaction at all with the general public. This portion of the questioning is specifically tailored to the evidence on record acknowledging Plaintiff's difficulty in interacting with others, his bi-polar disorder, and his history of depression. The ALJ also eliminated the fields of food preparation, handling, or sale as well as medical work due to Plaintiff's Hepatitis C. This narrowly tailored hypothetical takes into account the specific limitations of Plaintiff, both physical and mental/psychological. R. 299.

Plaintiff's charge that the ALJ relied upon his lay opinion by taking into account the personal daily activities of Plaintiff is not persuasive. The ALJ's assessment of Plaintiff's activities of daily living served only as supplementary evidence, already in the record, illustrating that despite difficulty handling stress, Plaintiff could focus well in limited stress environments, could retain information and follow instructions. R. Testing by Plaintiff's primary treating physician Dr. Cseh, psychiatric staff at area hospitals after his suicide attempts and Dr. Carosso a consultive psychologist determined his GAF [2] scores to be between 40 and 50, typically maintaining a score of 43. R. 179. Despite low GAF scores, mental status examinations

---

[2]GAF is an acronym referring to an individual's score on the Global Assessment of Functioning scale. *Winters v. Barnhart* 153 Fed. Appx. 846 (3d Cir. 2005) citing American Psychiatric Association *Diagnostic and Statistical Manual of Mental Disorders*, 32 (4th ed. Text Revision 2000)(hereinafter referred to as DSM-IV-TR).

of Plaintiff determined that he engaged in a wide variety of daily activities, decision making, and showed signs of improved function in low stress situations. The ALJ used evidence of Plaintiff's daily activities in conjunction with his GAF scores and periodic mental status evaluations to develop a comprehensive picture of his disability based upon his mental health status.

The ALJ requested from Plaintiff's counsel, additional evidence that would prove Plaintiff's claim that his mental health impairments fell within the guidelines of the Social Security Administration. R. 307. The attorney for Plaintiff was unable to produce additional documents from the treating physician, including a "mental health residual functional capacity form" that would help substantiate Plaintiff's claims. R 306. Absent additional medical evidence, the ALJ, working with the information presented, considered the evidence available to him and made a reasonable determination as to Plaintiff's qualification for Social Security benefits. R. 305-307. The standard of review for Social Security cases requires only substantial evidence, meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). If substantial evidence is determined to support the Commissioner's decision, the court must affirm that decision. 42 U.S.C. § 405(g).

In this case, the ALJ detailed his findings at all five steps of the evaluation process. *See Burns v. Barhhart* F.3d 113, 15 (2002). In light of the evidence presented, Plaintiff shows improvement in his symptoms when following his prescribed course of treatment and can function well in an environment adaptable to his physical limitations and his difficulties dealing with stress. The record contains substantial evidence to support the ALJ's conclusion that Plaintiff does not qualify for SSI benefits. Thus, the standard for a Social Security appeal has been met in this case and the Court must affirm the decision of the ALJ. 42 U.S.C. § 405 (g).

**VI.**     **CONCLUSION**

For the foregoing reasons, the Court finds that the decision of the ALJ was supported by substantial evidence. Accordingly, the decision of the ALJ will be affirmed. An appropriate Order will follow.

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc.   Karl E. Osterhout, Esquire
1789 South Braddock Avenue
Suite 570
Pittsburgh, PA 15218

Rebecca Haywood
Assistant U.S. Attorney